Earl, J.
This action was brought to recover upon three promissory notes, and the complaint contains a separate count for each note. One note was for $30,000, dated the 15th day of May, 1889, payable in one year with interest at six per cent per annum. The second was a similar note for $40,000, dated the '20th day of June, 1889; and the third note was similar for $2,000, dated the 16th day of April, 1890. The notes are not set out in the complaint, but in each count it is alleged that “ the defendant gave a certain promissory note in writing, whereby it promised one year after date to pay Coffin and Stanton, agents, etc., these plaintiffs, or order, the sum ” named, with interest, and delivered the note to the plaintiffs; that the note had not been paid, and the amount thereof remained wholly unpaid. The defendant, in its answer, admits the making of the notes described in the complaint, but alleges that they were made, executed and delivered under and pursuant to an agreement between the plaintiffs and the defendant, which is annexed to and made part of the answer. It denies that the notes had not been paid, but alleges, on the contrary, that they had been paid and satisfied. It also alleges the *16 making of another agreement bearing date the 11th day of June, 1890, which is also annexed to the answer. The action was brought to trial at a circuit, and at the close of the evidence the court directed a verdict in favor of the plaintiffs. The defendant assails the judgment entered upon that verdict upon various grounds, which we will separately notice.
1. Upon the trial the counsel for the plaintiffs, claiming that the execution and delivery of the notes were admitted by the answer, proved the interest thereon and rested. The defendant’s counsel then moved to dismiss the complaint upon the ground that the notes were not proved, and the court denied the motion. In this there was no error. The complaint alleges the making and delivery of the notes to the plaintiffs and the answer admits those allegations, but alleges that they were made and delivered pursuant to an agreement which is annexed to the answer. That was affirmative matter to be proved by the defendant ; and, therefore, the court committed no error in the ruling complained of.
2. The defendant put the notes in evidence, and they were all similar except as to dates and amounts. The note set forth in the first count of the complaint is as follows :
“ Stock Note — Thos. G. Hall, Stationer & Printer, 65 Exchange Place, N. Y.
“$30,000.
New York, May 15, 1889.
“ One year from date, and upon return of security given, we promise to pay to Coffin & Stanton, Agts., etc., or order, thirty thousand dollars, for value received, with interest at six per cent per annum, having deposited with them as collateral security: 60,000 Grand Rapids Hydraulic Company Six Per Cent Bonds, with authority to sell the same, or other security subsequently substituted, at the board of brokers, or at public or private sale, at their option, on the nonperformance of this promise, and without further notice; applying the net proceeds to the payment of this note, including interest, and accounting to us for the surplus, if any. In case of deficiency, we promise to pay to said Coffin & Stanton, Agts., the amounts thereof forthwith after such sale, with legal interest.
“ President and Directors of ti-le Grand “ Rapids Hydraulic Company,
“ By M. R. Crow,

“ Presiderit.”

It is now claimed that the plaintiffs could not recover upon the notes without alleging and proving a return of the bonds delivered with them as collateral security for their payment. Assuming that the plaintiff ought to have returned the bonds or tendered them to the defendant before the commencement of the action, no' such defense is alleged in the answer, and no such defense was, in any way, insisted upon or alluded to upon the trial. Therefore, it *17 is not available here. The notes were by their terms due and payable, and if the defendant intended to rely upon the defense that the bonds had not been returned before the commencement of the action, it should, by appropriate allegations in its answer, have given the plaintiffs notice of that defense.
3. The defendant claims that the notes and the syndicate agreement, “A,” under and pursuant to which they were given, should be construed together as part of the same instrument. We do not think this claim entirely well founded. The notes constitute separate, independent, entire and complete agreements. The syndicate agreement executed at or about the same time may, undoubtedly, be read for the purpose of qualifying the rights of the plaintiffs as holders of the note, and when we come to read that agreement we find nothing therein which qualifies their rights, except what has been called the “ unit clause,” and that is as follows: “ In the event of the nonpurchase of the water works system of the city of Grand Rapids, Mich., and nonpayment of the note by the Grand Rapids Hydraulic Company, or its assigns, then the syndicate shall act as a unit for their mutual interests.” There were four other parties to the syndicate agreement besides, the plaintiffs and the defendant; the water works system of the city of Grand Rapids had not been purchased, and the notes in suit had not been paid, and, therefore, it may well be claimed that this clause in the syndicate agreement came into operation. But it is difficult, if not impossible, to tell precisely what the par-; ties meant by it, and what scope in construing the whole agree-' ment it should receive. Does it mean that the parties must act as a unit in enforcing payment of these notes, so that if one of the parties dissented the obligation of the defendant to pay could not be enforced, and thus that four parties to the agreement should be placed at the absolute mercy of one party? We can scarcely believe that such was the intention of the parties in inserting that clause in the agreement, and it can have full force and effect without giving it such a meaning. But further, the agreement contained in the clause was not made with the defendant. It is an agreement between the members of the syndicate, and whatever its force may be it has operation between them only, and they only can insist upon its performance and enforce it. It is in no way an agreement with the defendant, or for its benefit. It is a stipulation which it can in no way insist upon or enforce. A still further answer to this claim is that no such defense is set up in the answer. There is no allegation there that this action was. commenced in violation of the unit clause.
The syndicate agreement contained another clause, as follows: “ Í3 oho agreed that such firm or individual signing this agreement shall take up, pay for and carry their or his proportionate amount of loan made to and bonds purchased of said The Grand Rapids Hydraulic Company, as stated herein.” There is no allegation in the answer that the plaintiffs or any party to the syndicate agreement violated that clause.
Hence we conclude that there is nothing in the agreement which *18 furnishes a defense to this action, and that the trial judge did" not err, when the defendant offered to put it in evidence, in excluding it on the ground that it did not furnish a defense to the action.
4. Upon the trial, the defendant offered to put in evidence agreement “ B.” annexed to the answer, and it was excluded by the trial judge upon the ground that it did not furnish any defense to the action. That agreement was not signed by the defendant, and it was not a party thereto. It is a bondholders’ agreement and was made for their protection, and signed solely by them. It contains stipulations binding them as between each other, and it is not perceived how the defendant can enforce or avail itself of any stipulation contained therein. If the plaintiff violated any of the stipulations contained in that agreement, the other parties thereto might have some remedy against them, but the defendant could not have. It is provided, in that agreement, that it ‘‘shall not be binding until it is signed by all the holders of the bonds of the said Grand Eapids Hydraulic Company, and all the bonds and past-due coupons, to be delivered to the trustee, are deposited under this agreement.” There is no allegation in the answer that that agreement, by its terms, had ever become operative, or that all the bondholders had signed it, or that all the bonds and past-due coupons had been deposited under the agreement. But even if the agreement became operative, and the defendant could in any way be treated as a party thereto, the answer does not show a breach of the agreement on the part of the plaintiffs. The only stipulation in the agreement which is referred to in the answer as having been violated by the plaintiffs is the following:
“ It is further understood and agreed by the holders of the said bonds, respectively, that they shall surrender and cancel all the notes of the Grand Eapids Hydraulic Company, now held by them, including all notes indorsed by M. E. Crow, of New York, or signed or guaranteed by said M. E. Crow, that are connected with said Grand Eapids Hydraulic Company, and that the fifty per cent, par value of bonds retained by them, respectively, shall be received and accepted by them in full payment and satisfaction of all such claims, notes and demands.”
There is no allegation in the answer that the plaintiffs had ever been asked to surrender 'and cancel these notes, or that they had refused to retain, or been permitted to retain, the fifty per cent of the par value of the bonds mentioned. There is no allegation that the other bondholders who signed the agreement at the same time with the plaintiffs had ever surrendered fifty per cent of their bonds, as provided in the agreement, and, therefore, the answer does not show that the plaintiffs were in default. There is no reason to suppose from anything appearing in the answer that the bondholders’ agreement ever became operative, and there is no allegation in the answer that the defendant was a party thereto, or that it was made in any way for its benefit, or that it had any interest in the performance thereof. Therefore, the court did not err in holding that the answer showed no defense based upon that agreement
5. The trial court exercised its discretion in refusing to permit *19 the defendant to amend its answer upon the trial, and it has been settled by repeated decisions of this court that we have no jurisdiction to review the exercise of that discretion.
6. These notes appear to have been given to the plaintiffs as agents, and they were, undoubtedly, given to them for money loaned to the defendant by them and the other members of the syndicate. They took and held the notés, not only for themselves, but as agents or trustees of the other members of the syndicate. Upon the trial the defendant offered to show that the plaintiffs were not the sole persons interested in these notes, and objected that they alone could not maintain this action. But no such defense is alleged in the answer. The notes were given to the plaintiffs describing them as “agents, etc.,” and there is no allegation of any kind in the answer that they were not the proper persons to receive and enforce payment of the notes. As it did not allege in its answer that the plaintiffs did not have legal capacity to sue upon the notes, it must be deemed to have waived that defense, even if it existed. Code Civ. Pro., §§ 488, 498, 499. The plaintiffs could, therefore, maintain this action as trustees of an express trust under § 449 of the Code.
In the disposition of the objections which we have thus noticed, we think we have covered all the material objections taken by the defendant upon the trial, and we find no reason to disturb the judgment.
The judgment- should be affirmed, with costs.
All concur.